UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELANE PRODUCTS, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>Defendant. | Case No. 2:20-cv-07834-MCS-AFM<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [26]** |

    Before the Court is a Motion to Dismiss ("Motion") filed by defendant Continental Casualty Company ("CCC"). Mot., ECF No. 26. Plaintiff Selane Products, Inc. filed an Opposition and CCC filed a Reply. *See* Opp., ECF No. 32; *see also* Reply, ECF No. 34. The Court considered the papers filed with the Motion and deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); Local Rule 7-15. The hearing is therefore **VACATED** and removed from the Court's calendar.

    For the following reasons, the Motion is **GRANTED**.

## I. SELANE'S ALLEGATIONS

Selane manufacturers dental appliances and CCC is its "long-time commercial property and business interruption insurer." Compl. ¶¶ 1-2, ECF No. 1. After local and state orders stemming from the COVID-19 pandemic required Selane to suspend business operations, CCC denied a lost business income claim under Selane's insurance policy. *Id.* ¶¶ 14, 45-46; *see also* Policy, Compl. Ex. A.

These orders include:

- **March 12** Executive Order N-25-20, mandating that: "All residents are to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19." Compl. ¶ 34; ECF No. 26-2.
- **March 19** Executive Order N-33-20, incorporating California Government Code 8665, which permits fines and criminal charges for non-compliance. Compl. ¶ 38; ECF No. 26-3. This order's purpose is: "To preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability…" *Id.*
- **March 16** County of Los Angeles Department of Public Health Order "prohibiting gatherings of more than 50 people." Compl. ¶ 36; ECF No. 26-4.
- **March 19** County of Los Angeles Department of Public Health Order, revised to mandate closure of non-essential businesses. Compl. ¶ 37; ECF No. 26-5 ("This Order is being issued to protect the public health of Californians" and "looks to establish consistency across the state in order to ensure the that we mitigate the impact of COVID-19.")
- **March 21** County of Los Angeles Department of Public Health Order, revised to specifically require all non-essential "businesses to cease in-person operations, and close to the public." Compl. ¶ 40; ECF No. 26-6.

- **April 10** County of Los Angeles Department of Public Health Order, extending closures through May 15. Compl. ¶ 42; ECF No. 26-7.
- **March 19** City of Los Angeles Public Order, requiring Los Angeles citizens "to remain in their homes" and non-essential businesses "to cease operations that require in-person attendance by workers at a workplace." Compl. ¶ 39; ECF No. 26-9.
- **April 1** City of Los Angeles Public Order, continuing closure of non-essential businesses. Compl. ¶ 41; ECF No. 26-10.
- **April 10** City of Los Angeles Public Order, extending "mandated closures through May 15." Compl. ¶ 42; ECF No. 26-11.
- **April 27** City of Los Angeles Public Order, continuing closure of non-essential businesses. Compl. ¶ 44; ECF No. 26-12.
- **May 8** City of Los Angeles Public Order, continuing closure of non-essential businesses. Compl. ¶ 44; ECF No. 26-13.

Selane's Policy includes two endorsements concerning Selane's loss of business income: the Business Income and Extra Expense Endorsement and the Civil Authority Endorsement. Compl. ¶¶ 16-19. The Business Income and Extra Expense Endorsement states in part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

Policy 43.

"Suspension" means "the partial or complete cessation of your business activities." *Id.* 40. "Operations" means "the type of your business activities occurring at the described premises and tenantability of the described premises." *Id.* 38. "Covered Causes of Loss" means "RISKS OF DIRECT PHYSICAL LOSS unless the loss is" excluded by the Policy. *Id.* 22-23. "Period of

3

restoration" means the period beginning "with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises" and ending "on the earlier of: **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or **(2)** The date when business is resumed at a new permanent location." *Id.* 38.

Under "**Extra Expense**," the Policy states:

> a. Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.
> b. We will pay Extra Expense (other than the expense to repair or replace property) to:
> **(1)** Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at a replacement premises or temporary locations,…; or
> **(2)** Minimize the "suspension" of business if you cannot continue "operations."

*Id.* 44.

Under "**Civil Authority**" the Policy states:

> When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

*Id.* 69.

Based on CCC's denial of benefits under the Policy, Selane brings the following claims against CCC on behalf of itself and a putative class of CCC policyholders: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unfair business practices, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"); and (4) Declaratory Relief. *Id.* ¶¶ 78-112.

4

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Leave to amend should be freely granted unless it is clear the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Averments of fraudulent conduct are subject to the heightened pleading standard of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). To meet Rule 9(b), the complaint must identify the "who, what, when, where, and how" of the fraudulent misconduct, "as well as what is false or misleading about" it, and "why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

There are two instances in which courts may consider information outside of the complaint without converting a Rule 12(b)(6) motion into one for summary judgment: judicial notice and incorporation by reference. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Judicial notice allows courts to consider a fact that is not subject to reasonable dispute because it is generally known within the territory or can be determined from sources of unquestionable accuracy. Fed. R. Evid. 201. Incorporation by reference allows a court to consider documents which are (1) referenced in the complaint, (2) central to the plaintiff's claim, and (3) of unquestioned authenticity by either party. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

### III. EXTRANEOUS MATERIALS

CCC seeks judicial notice of the health-related orders discussed above, and orders and transcripts from other court proceedings. *See* CCC's Request for Judicial Notice, ECF No. 26-1. Selane seeks judicial notice of a report filed with the U.S. Securities and Exchange Commission ("SEC"), published articles concerning pandemics' impact on the insurance industry, and a hearing transcript from a related court proceeding. *See* Selane's Request for Judicial Notice, ECF No. 33.

Under Federal Rule of Evidence 201, a court may take judicial notice of court filings and other matters of public record. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record"); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings). The Court therefore considers the proffered court orders, transcripts, and government orders, but cannot take judicial notice of reasonably disputed facts in them. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). The Court considers the SEC filing because it is a publicly available document of unquestioned authenticity incorporated by reference into the Complaint. Compl. ¶ 23. The Court considers the two published articles offered by Selane because they are similarly paraphrased and incorporated into the Complaint. *Id.* ¶¶ 24-25.

### IV. DISCUSSION

CCC argues that COVID-19-related business interruption cases interpreting identical provisions under California law confirm that Selane's losses fall outside the Policy. *See, e.g., 10E, LLC v. Travelers Indem. Co. of Connecticut et al.*, 2020 WL 6749361, at *3 (C.D. Cal. Nov. 13, 2020) (dismissing claims without leave to amend because lost business income stemming from COVID-19 closures fell outside policy's Business Income and Extra Expense coverage and Civil Authority coverage); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*, 2020 WL 6440037 (C.D. Cal. Oct. 27, 2020) (same); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*,

2020 WL 6156584 (C.D. Cal. Oct. 19, 2020) (same); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) (same); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 2020 WL 5742713 (C.D. Cal. Sept. 16, 2020) (same); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) (same, but allowing motion for leave to amend, which was later denied).

Selane stresses that this authority is not controlling, arguing that the Policy covers Selane's losses under the Civil Authority Endorsement *and* the Business Income and Extra Expense Endorsement. Opp. 10 (citing *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 842 (1990); *Armstrong World Indus., Inc. v. Aetna Cas & Sur. Co.,* 45 Cal. App. 4th 1, 103 (1996); *Hughes v. Potomac Ins. Co.*, 1999 Cal. App. 2d 239, 248-49 (1962)). The Court construes each endorsement in turn, guided by the following well-established interpretive principals.

"[I]nterpretation of an insurance policy is a question of law." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115, 988 (1999). "When interpreting a policy provision, we must give terms their ordinary and popular usage, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Id.* (citation and quotation marks omitted); *see also* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.") "The terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Comput. Entm't Am. Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) (citing Cal. Civ. Code § 1641; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993)); *see also Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("The best evidence of the intent of the parties is the policy language."); *see also* Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible…").

7

### A. <u>Civil Authority Coverage</u>

The Civil Authority Endorsement conditions coverage "on direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss." Policy 69. A "Covered Cause of Loss" is a cause not limited by the Policy. *Id.* 22-23.

Selane's Complaint points to the physical attributes of COVID-19, which "can adhere to surfaces of property for several days and can linger in the air in building for several hours," and alleges they constitute "physical loss of or damage to the property." Compl. ¶¶ 4, 30-31, 49, 51. Aside from these legal conclusions, however, Selane does not adequately allege causes of "direct physical loss of or damage to property" as those terms appear in the Policy. *See, e.g., W. Coast Hotel Mgmt.*, 2020 WL 6440037, at *3–4 (rejecting conclusory allegations of physical loss to property stemming from COVID-19 as unfounded attempt to establish civil authority coverage) (citing *10E*, 2020 WL 539653, at *6 (granting motion to dismiss claim for civil authority coverage where plaintiff "paraphrase[d] the language of the Policy without specifying facts that could support recovery under the Policy")). As explained by the Honorable Steven V. Wilson and adopted in persuasive opinions addressing allegations and arguments like Selane's:

> Under California law, losses from inability to use property do not amount to "direct physical loss of or damage to property" within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a "distinct, demonstrable, physical alteration." "Detrimental economic impact" does not suffice. An insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage… Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property not that the restrictions caused direct physical loss or damage.
>
> ***
>
> Plaintiff attempts to circumvent the plain language of the Policy by emphasizing its disjunctive phrasing – "direct physical loss of *or* damage to property," – and insisting that "loss," unlike "damage," encompasses temporary impaired use. To support this argument, Plaintiff relies on *Total*

> *Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767 (C.D. Cal. 2018). In *Total Intermodal*, the court concluded that giving separate effect to "loss" and "damage" in the phrase, "direct physical loss or damage," required recognizing coverage for "the permanent dispossession of something." *Id.* at *4.
>
> Even if the Policy covers "permanent dispossession" in addition to physical alteration, that does not benefit Plaintiff here. Plaintiff's FAC does not allege that it was permanently dispossessed of any insured property.

*10E*, 2020 WL 539653, at *3-5 (citations omitted); *see also, e.g., Geragos & Geragos*, 2020 WL 6156584, at *4 (adopting this reasoning, stating that "[t]he Court finds persuasive the reasoning of the Honorable Steven V. Wilson who addressed identical policy language as it relates to COVID-19 with parties whose arguments mirrored those made before this Court."); *Water Sports Kauai v. Fireman's Fund Ins. Co.,* 2020 WL 6562332, at *1 (N.D. Cal. Nov. 9, 2020) (adopting this reasoning and concluding: "I agree with the vast majority of cases that have addressed materially similar policy provisions and facts. [Plaintiff] has failed to plausibly plead Business Income or Civil Authority coverage.")

Selane contends that *10E* "misreads" the Honorable André Birotte Jr.'s decision in *Total Intermodal*. Opp. 25. Quite the reverse, Judge Birotte Jr. recently adopted *10E*'s supposed "misreading" of his *Total Intermodal* opinion, rejecting the very interpretation of "direct physical loss of" that Selane offers here. *Mark's Engine*, 2020 WL 5938689, at *3 (adopting Judge Wilson's finding in *10E* and stating: "to the extent Plaintiff relies on this Court's order in *Total Intermodal* for the proposition that 'direct physical loss of' encompasses deprivation of property without physical change in the condition of the property, the Court notes that such an interpretation of any insurance policy would be without any 'manageable bounds.') (citing *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 2020 WL 5742713 (distinguishing *Total Intermodal* from COVID-19 business closure). This Court concurs with recent decisions in this District and likewise determines that Selane's conclusory allegations of "direct physical loss of or damage to

property" do not, under California law, support recovery pursuant to the Policy's Civil Authority Endorsement. *See, e.g., 10E*, 2020 WL 539653, at *3-5; *Mark's Engine,* 2020 WL 5938689, at *3-5; *see also Pappy's Barber Shops*, 2020 WL 5500221, at *6 ("Accordingly, because the complaint does not plausibly allege (1) any civil authority orders that prohibited access to Plaintiffs' places of business (as opposed to simply prohibiting Plaintiffs from operating their businesses), or (2) any direct physical loss of or damage to property, other than at Plaintiffs' premises, the complaint does not state a claim for coverage under the civil authority provision of the Policy.")

Selane's purportedly "controlling" authority is inapposite and does not warrant a different result. Opp. 14-15 (citing *AIU,* 51 Cal. 3d at 842; *Armstrong,* 45 Cal. App. 4th at 103). The commercial general liability policies in *AIU* and *Armstrong* expressly included the "loss of use" of tangible property. 51 Cal. 3d at 815 n. 3; 45 Cal. App. 4th at 88. Selane's Policy, in contrast, excludes "loss of use." Policy 26 ("We will not pay for loss or damage caused by… loss of use or loss of market.") In short, Selane provides no convincing argument or on-point authority to justify departure from the numerous cases finding that COVID-19 and its impacts do not constitute "direct physical loss of or damage to property." The Policy's Civil Authority Endorsement therefore does not cover Selane's losses.

### B. Business Income and Extra Expense Coverage

Like the Civil Authority Endorsement, the Business Income and Extra Expense Endorsement conditions coverage on "direct physical loss of or damage to property…" Policy 43. As this Court has determined that Selane offers no well-pled allegations to infer that it suffered "direct physical loss of or damage to property" due to COVID-19, Selane has also failed to show that COVID-19 and its impacts as alleged in the Complaint triggered coverage under the Business Income and Extra Expense Endorsement. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) ("The burden is on the insured to establish that the claim is within the basic scope of coverage...")

(citation omitted). Because the Policy does not cover Selane's losses, Selane cannot state a claim for breach of contract, *1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1020-21 (2006) ("The failure of [a policy's] conditions precedent is a complete defense to [an insured's] breach of contract claim."), breach of implied covenants, *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990) ("Where benefits are withheld for proper cause, there is no breach of the implied covenant."), or declaratory relief. *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1514 (9th Cir. 1994) ("The district court,… may grant declaratory relief only when there is an actual case or controversy; a declaratory judgment may not be used to secure judicial determination of moot questions."), *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019).

CCC's Motion to Dismiss Selane's claims for breach of contract, breach of implied covenant, and declaratory relief is **GRANTED**.

### C. UCL and Punitive Damages

California's UCL provides that "unfair competition ... include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof Code § 17200. The UCL "borrow[s] violations of other laws and treats" them as unlawful business practices "independently actionable under section 17200." *Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992) (quotation omitted). To state a UCL claim, a plaintiff must plead a violation of another statute or common law. *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001) (UCL claims "stand or fall depending on the fate of the antecedent substantive causes of action"). Since Selane has not adequately alleged a predicate violation of law as explained above, its UCL claim fails. *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (citing *Cel-Tech Comms., Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 182 (1999) ("[T]he breadth of [the UCL] does not give a plaintiff license to 'plead around' the absolute bars to relief contained in other possible causes of action by recasting those causes of action as one for unfair competition.")) Because

Selane has not stated a claim, its punitive damages prayer also fails. *Ismail v. Cty. of Orange*, 917 F. Supp. 2d 1060, 1073 (C.D. Cal. 2012), *aff'd*, 676 F. App'x 690 (9th Cir. 2017) (dismissal of underlying claims "obviates the need to consider plaintiff's requests for punitive damages" because such requests are "not independent causes of action.") (citing *London v. Sears, Roebuck & Co.,* 458 Fed. Appx. 649, 651 (9th Cir. 2011) ("Because we affirm the district court's summary judgment dismissal, we need not consider London's claims for punitive damages."))

CCC's Motion to Dismiss Selane's UCL and punitive damages claims is **GRANTED**.

## V. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. Selane's Complaint is **DISMISSED with leave to amend**. If Selane chooses to file a First Amended Complaint, it must do so within 14 days of this Order.

**IT IS SO ORDERED.**

Dated: November 24, 2020   _____
                            MARK C. SCARSI
                            UNITED STATES DISTRICT JUDGE