UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELANE PRODUCTS, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>Defendant. | Case No. 2:20-cv-07834-MCS-AFM<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [39]** |

After the Court dismissed Plaintiff Selane Products, Inc.'s Complaint with leave to amend, Selane filed a First Amended Complaint alleging the same claims. *See* FAC, ECF No. 36; *see also* Order Granting Mot. to Dismiss ("MTD Order"), ECF No. 35. Now before the Court is defendant Continental Casualty Company's ("CCC") Motion to Dismiss. *See* Mot., ECF No. 39. Selane filed an Opposition and CCC filed a Reply. *See* Opp., ECF No. 40; *see also* Reply, ECF No. 42. The Court held oral arguments and took the matter under submission. The Motion is **GRANTED**.

## I. SELANE'S ALLEGATIONS

Selane manufacturers dental appliances and CCC is its "long-time commercial property and business interruption insurer." FAC ¶¶ 1-2. After local and state orders stemming from the COVID-19 pandemic required Selane to suspend business operations, CCC denied a lost business income claim under Selane's insurance policy. *Id.* ¶¶ 16, 65-66; *see also* Policy, FAC Ex. A. These orders include:

- **March 12** Executive Order N-25-20, mandating that: "All residents are to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19." FAC ¶ 37; Request for Judicial Notice ("RJN," ECF No. 39-1) Ex. B.
- **March 19** Executive Order N-33-20, incorporating California Government Code 8665, which permits fines and criminal charges for non-compliance. FAC ¶ 41; RJN Ex. C. This order's purpose is to "preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability." *Id.*
- **March 16** County of Los Angeles Department of Public Health Order "prohibiting gatherings of more than 50 people." FAC ¶ 39; RJN Ex. D.
- **March 19** County of Los Angeles Department of Public Health Order, revised to mandate closure of non-essential businesses. FAC ¶ 40; RJN Ex. E.
- **March 21** County of Los Angeles Department of Public Health Order, revised to specifically require all non-essential "businesses to cease in-person operations, and close to the public." FAC ¶ 43; RJN Ex. F.
- **April 10** County of Los Angeles Department of Public Health Order extending closures through May 15. FAC ¶ 45; RJN Ex. G.
- **March 19** City of Los Angeles Public Order requiring Los Angeles citizens "to remain in their homes" and non-essential businesses "to cease operations that require in-person attendance by workers at a workplace." FAC ¶ 42; RJN Ex. I.

- **April 1** City of Los Angeles Public Order, continuing closure of non-essential businesses. FAC ¶ 44; RJN Ex. J.
- **April 10** City of Los Angeles Public Order, extending "mandated closures through May 15." FAC ¶ 46; RJN Ex. K
- **April 27** City of Los Angeles Public Order, continuing closure of non-essential businesses. FAC ¶ 47; RJN Ex. L
- **May 8** City of Los Angeles Public Order, continuing closure of non-essential businesses. FAC ¶ 47; RJN Ex. M.

Selane's business was "completely or partially suspended" due to these orders, which also "substantially impaired the functionality of insured locations and property" by "preventing and/or impairing the ability of Selane and other Class Members from being able to utilize the property for its intended purpose." FAC ¶¶ 49, 63. Selane's Policy includes two endorsements concerning Selane's loss of business income: the Business Income and Extra Expense Endorsement and the Civil Authority Endorsement. *Id.* ¶¶ 18-21. The Business Income and Extra Expense Endorsement states in part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

Policy 43.

"Suspension" means "the partial or complete cessation of your business activities." *Id.* 40. "Operations" means "the type of your business activities occurring at the described premises and tenantability of the described premises." *Id.* 38. "Covered Causes of Loss" means "RISKS OF DIRECT PHYSICAL LOSS unless the loss is" excluded by the Policy. *Id.* 22-23. "Period of restoration" means the period beginning "with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described

premises" and ending "on the earlier of: **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or **(2)** The date when business is resumed at a new permanent location." *Id.* 38.

Under "**Extra Expense**," the Policy states:

> a. Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.
> b. We will pay Extra Expense (other than the expense to repair or replace property) to:
>   **(1)** Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at a replacement premises or temporary locations,…; or
>   **(2)** Minimize the "suspension" of business if you cannot continue "operations."

*Id.* 44.

Under "**Civil Authority**" the Policy states:

> When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

*Id.* 69. The Policy includes a "Microbe Exclusion" barring coverage for damage caused by the presence of a "microorganism [or] organism that causes infection or disease." *Id.* 111-12.

Based on CCC's denial of benefits under the Policy, Selane brings the following claims against CCC on behalf of itself and a putative class of CCC policyholders: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unfair business practices, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"); and (4) Declaratory Relief. FAC ¶¶ 92-144.

4

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

## III. EXTRANEOUS MATERIALS

CCC seeks judicial notice of the health-related orders discussed above, and orders and transcripts from other court proceedings. *See* RJN. Selane seeks judicial notice of orders and a hearing transcript from related court proceedings. *See* Selane's RJN, ECF No. 40-1. The parties also request "judicial notice" of state court decisions solely for their interpretation of analogous insurance provisions. *See* Not. of Supp. Authority, ECF No. 41; *see also* Obj. to Not. of Supp. Authority, ECF No. 43.

Under Federal Rule of Evidence 201, a court may take judicial notice of court filings and matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings). The Court therefore considers the proffered court orders, transcripts, and government orders, but cannot take judicial notice of reasonably disputed facts in them. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). The Court may consider the parties' proffered cases as persuasive authority, but it need not take judicial notice of them.

## IV. DISCUSSION

CCC argues that COVID-19-related business interruption cases interpreting identical or analogous provisions confirm that Selane's losses fall outside the Policy. *See, e.g., O'Brien Sales & Mktg., Inc. v. Transportation Ins. Co.*, 2021 WL 105772 (N.D. Cal. Jan. 12, 2021) (dismissing claims without leave to amend because lost business income stemming from COVID-19 closures fell outside policy's Business Income and Extra Expense coverage and Civil Authority coverage); *Jonathan Oheb MD, Inc. v. Travelers Cas. Ins. Co. of Am.,* 2020 WL 7769880 (C.D. Cal. Dec. 30, 2020) (same); *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, 2020 WL 7495180 (N.D. Cal. Dec. 21, 2020) (same); *Robert W. Fountain, Inc. v. Citizens Ins. Co. of Am.*, 2020 WL 7247207 (N.D. Cal. Dec. 9, 2020) (same); *10E, LLC v. Travelers Indem. Co. of Connecticut et al.*, 2020 WL 6749361 (C.D. Cal. Nov. 13, 2020) (same); *Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, 2020 WL 6865774 (C.D. Cal. Nov. 12, 2020) (same); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*, 2020 WL 6440037 (C.D. Cal. Oct. 27, 2020) (same); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 2020 WL 6156584 (C.D. Cal. Oct. 19, 2020) (same); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) (same); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 2020 WL 5742713 (C.D. Cal. Sept. 16, 2020) (same)*; Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020) (same, but granting "limited leave to amend"); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) (same, but allowing motion for leave to amend, which was later denied).

Selane stresses that this authority does not bind the Court, arguing that the Policy covers Selane's losses pursuant to the Civil Authority Endorsement *and* the Business Income and Extra Expense Endorsement under "controlling" California law. Opp. 11, 15, 25 (citing *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 842 (1990); *Armstrong World Indus., Inc. v. Aetna Cas & Sur. Co.,* 45 Cal. App. 4th 1, 103 (1996); *Hughes v.*

6

*Potomac Ins. Co.*, 1999 Cal. App. 2d 239, 248-49 (1962)). The Court construes each endorsement in turn, guided by the following well-established interpretive principals.

"[I]nterpretation of an insurance policy is a question of law." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115, 988 (1999). "When interpreting a policy provision, we must give terms their ordinary and popular usage, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Id.* (citation and quotation marks omitted). "The terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Comput. Entm't Am. Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) (citing Cal. Civ. Code § 1641); *see also Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("The best evidence of the intent of the parties is the policy language.").

### A. Civil Authority Coverage

The Civil Authority Endorsement conditions coverage "on direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss." Policy 69. A "Covered Cause of Loss" is a cause not limited by the Policy. *Id.* 22-23.

Selane's FAC points to the physical attributes of COVID-19, which "attaches to surfaces and lingers in the air and airspace of buildings," and alleges they cause "direct physical loss of or damage to property." FAC ¶¶ 51, 54, 62. The Court determined that similar averments in Selane's Complaint did not adequately allege "direct physical loss of or damage to property" as those terms appear in the Policy. MTD Order 8-10 (citing *W. Coast Hotel Mgmt.*, 2020 WL 6440037, at *3–4 (rejecting conclusory allegations of physical loss to property stemming from COVID-19 as unfounded attempt to establish civil authority coverage); *10E*, 2020 WL 539653, at *3-5 ("Under California law, losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase."); *Water Sports Kauai,* 2020 WL 6562332, at *1 ("I agree with the vast majority of cases that have

7

addressed materially similar policy provisions and facts. [Plaintiff] has failed to plausibly plead Business Income or Civil Authority coverage."). To cure these deficiencies, Selane added allegations concerning COVID-19's physical properties, transmissibility, and spread throughout California. FAC ¶¶ 21, 51-59. Selane's Opposition cites its allegation that COVID-19 causes "a distinct, demonstrable, physical alteration to property" and relies on authority the Court already distinguished. Opp. 15 (citing *AIU,* 51 Cal. 3d at 842; *Armstrong,* 45 Cal. App. 4th at 103). Again, unlike Selane's Policy, the commercial general liability policies in *AIU* and *Armstrong* expressly included the "loss of use" of tangible property. 51 Cal. 3d at 815 n. 3; 45 Cal. App. 4th at 88; Policy 26 ("We will not pay for loss or damage caused by… loss of use or loss of market."). Selane adding allegations about COVID-19's properties does not make the Policy ambiguous, alter the economic nature of Selane's loss, or justify departure from the MTD Order and voluminous authority from California district courts finding that COVID-19 and its impacts do not constitute "direct physical loss of or damage to property." Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible…").

Selane citing the Policy's Microbe Exclusion to support its interpretation is similarly unavailing. Opp. 18 ("Thus, in choosing to exclude coverage for loss or damage caused by the 'presence' of harmful 'organisms' and 'micro-organisms,' [CCC] confirmed its view that such loss or damage would have been covered in the absence of an exclusion."). That the Policy excludes damages triggered by disease-causing "organisms or microorganisms" does not mean that inanimate viruses are automatically covered by the Policy. *WAWGD, Inc. v. Sentinel Ins. Co.,* 2017 WL 4340437, at *7 (S.D. Cal. Sep. 29, 2017) ("Ordinarily, an exception to a policy exclusion does not create coverage not otherwise available under the coverage clause.") (citing *Hurley Constr. Co. v. State Farm Fire & Cas. Co.,* 10 Cal. App. 4th 533, 535 (1992)). In fact, without "direct physical loss of or damage to" property, the Court needn't even reach the Policy's exclusions. *Sony Computer Entm't Am. Inc. v. Am. Home Assur. Co.,* 532

F.3d 1007, 1017 (9th Cir. 2008) ("If coverage exists, then the court considers whether any exclusions apply. If coverage does not exist, the inquiry ends. The exclusions are no longer part of the analysis because 'they cannot expand the basic coverage granted in the insuring agreement.' The rule is no different for exceptions to exclusions.") (citation omitted).

Finally, Selane alleges that the restrictive orders *themselves* caused a "direct physical loss of or damage to property" by "preventing and/or impairing the ability of Selane and other Class Members from being able to utilize their property for its intended purpose." FAC ¶ 63. This unfounded argument has been soundly rejected because the Civil Authority Endorsement requires that "the civil authority action must be due to direct physical loss or damage to property"—it does not infer that the civil authority action can itself constitute "direct physical loss of or damage to property" triggering coverage. Policy 69; *Tralom, Inc. v. Beazley USA Servs., Inc.*, 2020 WL 8269539 (C.D. Cal. Dec. 29, 2020) (rejecting that civil authority orders can be both the cause of the physical loss and the result of the physical loss when construing identical provision and granting motion to dismiss without leave to amend); *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, 2021 WL 289547, at *6 (E.D. Pa. Jan. 28, 2021) ("Under this proposed interpretation, an insured could seek and obtain coverage *any* time there is a loss of use under the Business Income provision."); *Hajer v. Ohio Sec. Ins. Co.*, 2020 WL 7211636, at *4 (E.D. Tex. Dec. 7 2020) ("But this theory reverses the cause-effect relationship between the act of civil authority and the damage to neighboring property. The provision requires the physical damage to prompt the act of civil authority, not the other way around.").

In sum, Selane's negligible additions to the Complaint do not change this Court's determination that Selane's conclusory allegations of "direct physical loss of or damage to property" do not, under California law, support recovery under the Policy's Civil Authority coverage. MTD Order 9-10 (citing *Pappy's Barber Shops*, 2020 WL 5500221, at *6 ("Accordingly, because the complaint does not plausibly allege (1) any

Case 2:20-cv-07834-MCS-AFM Document 48 Filed 02/08/21 Page 10 of 11 Page ID #:1327

civil authority orders that prohibited access to Plaintiffs' places of business (as opposed to simply prohibiting Plaintiffs from operating their businesses), or (2) any direct physical loss of or damage to property, other than at Plaintiffs' premises, the complaint does not state a claim for coverage under the civil authority provision of the Policy.").

### B. Business Income and Extra Expense Coverage

Like the Civil Authority Endorsement, the Business Income and Extra Expense Endorsement conditions coverage on "direct physical loss of or damage to property…" Policy 43. As this Court has determined that Selane offers no well-pled allegations to infer that it suffered "direct physical loss of or damage to property" due to COVID-19, Selane has also failed to show that COVID-19 and its impacts as alleged in the FAC triggered coverage under the Business Income and Extra Expense Endorsement. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) ("The burden is on the insured to establish that the claim is within the basic scope of coverage...") (citation omitted). Because the Policy does not cover Selane's losses, Selane cannot state a claim for breach of contract, *1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1020-21 (2006) ("The failure of [a policy's] conditions precedent is a complete defense to [an insured's] breach of contract claim."), breach of implied covenants, *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990) ("Where benefits are withheld for proper cause, there is no breach of the implied covenant."), or declaratory relief. *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1514 (9th Cir. 1994) ("The district court,… may grant declaratory relief only when there is an actual case or controversy; a declaratory judgment may not be used to secure judicial determination of moot questions."), *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019).

CCC's Motion to Dismiss Selane's claims for breach of contract, breach of implied covenant, and declaratory relief is **GRANTED**.

### C. UCL and Punitive Damages

California's UCL provides that "unfair competition ... include[s] any unlawful,

10

unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof Code § 17200. The UCL "borrow[s] violations of other laws and treats" them as unlawful business practices "independently actionable under section 17200." *Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992) (quotation omitted). To state a UCL claim, a plaintiff must plead a violation of another statute or common law. *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001) (UCL claims "stand or fall depending on the fate of the antecedent substantive causes of action"). Because Selane has not adequately alleged a predicate violation of law as explained above, its UCL claims fail. *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001). Because Selane has not stated a claim, its punitive damages claim likewise fails. *Ismail v. Cty. of Orange*, 917 F. Supp. 2d 1060, 1073 (C.D. Cal. 2012), *aff'd*, 676 F. App'x 690 (9th Cir. 2017) (dismissal of underlying claims "obviates the need to consider plaintiff's requests for punitive damages" because such requests are "not independent causes of action.") (citing *London v. Sears, Roebuck & Co.,* 458 Fed. Appx. 649, 651 (9th Cir. 2011) ("Because we affirm the district court's summary judgment dismissal, we need not consider London's claims for punitive damages.")). CCC's Motion to Dismiss Selane's UCL and punitive damages claims is **GRANTED**.

## V. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. Because Selane has had ample opportunity to amend and confirmed at the hearing that pleading more facts would be futile, Selane's Complaint is **DISMISSED with prejudice**. The parties shall jointly submit a proposed judgment within two days.

**IT IS SO ORDERED.**

Dated: February 8, 2021

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

11